**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SHAUN RICARDO RAMBARRAT,

                                    Petitioner,                          9:26-cv-448
                                                                         (ECC)
v.

TODD LYONS, ACTING DIRECTOR, UNITED
STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT; and FREDERICK AKSHAR,
SHERIFF BROOME COUNTY JAIL,

                                    Respondents.

---

John L. Perticone, Esq., *for Petitioner*
Emer M. Stack, Assistant United States Attorney, *for Federal Respondent*
Joshua T. Terrell, Assistant Broome County Attorney, *for State Respondent*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.      **INTRODUCTION**

Petitioner Shaun Ricardo Rambarrat, a citizen of Guyana, was admitted to the United States

on January 23, 2024 pursuant to a nonimmigrant R-B1/B2 visa. Dkt. No. 1 ¶ 7, *see also id.* Ex. A

(Rambarrat Visa). Petitioner failed to apply to extend his visa and remained in the United States

beyond its expiration date. *Id.* at ¶ 8. On January 6, 2026, Petitioner was taken into custody by

Immigration and Customs Enforcement (ICE) in Massena, New York. *Id.* at ¶ 24. On March 23,

2026, while he was detained at the Broome County Correctional Facility, Petitioner filed a habeas

petition pursuant to 28 U.S.C. § 2241, asserting that his continued detention violates his (1)

Fourteenth Amendment right to marry, (2) Fourth Amendment right to be free of unreasonable

seizures, and (3) Fifth Amendment due process rights. *Id.* at ¶¶ 2, 6. In his reply, Petitioner

specifically argues that that the immigration judge violated his Fifth Amendment due process

rights by requiring him to bear the burden of proof at his prior bond hearings.  Dkt. No. 8 at 1-2. The petition is fully briefed, Dkt. Nos. 5, 7, 8, and a hearing was held on April 6, 2026.  The Federal Respondent filed a surreply and status report on May 8, 2026.  Dkt. Nos. 11, 12.

For the following reasons, the petition is granted only to the extent that within seven (7) days Petitioner shall be granted a bond hearing before an immigration judge at which the Government shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence.  The petition is in all other respects denied.

## II.    BACKGROUND[1]

Petitioner's visa was initially issued as valid from March 20, 2015 through March 18, 2025. Dkt. No. 1 ¶ 7.  He "lawfully entered and left the United States approximately 5 times during that period."  *Id.*  Petitioner's last entry into the United States was on January 23, 2024, at which time he was authorized to remain in the United States until February 10, 2024.  *Id.*  Petitioner did not apply to extend his visa, and has remained in the United States without authorization.  *Id.* at ¶ 8.

Petitioner has been in a relationship with Sarai Garcia, a U.S. citizen, for three years, and has lived with Garcia in the United States since his last entry in 2024.  Dkt. No. 1 ¶ 10.  They have a son with special needs, who was born on March 23, 2023.  *Id.* at ¶¶ 10, 12.  Petitioner also "act[s] as a father" to Garcia's other two young children.  *Id.* at ¶ 11.  Since May 2025, Petitioner, Garcia and the children have lived together in an apartment in New York.  *Id.* at ¶ 16.  Petitioner "obtained a New York State Driver's License, purchased a car, and was listed on the insurance policy for the car."  *Id.* at ¶ 17.

Petitioner "proposed marriage to [Garcia] on Christmas Day 2025."  Dkt. No. 1 ¶ 15, *see also id.* Exs. D (Garcia affidavit), H (photos), I (receipt).  They planned to "get married within a

---

[1] The facts are not disputed unless otherwise noted.

few months," and  "have [Garcia] file an I-130 application and to change Petitioner's status."  *Id.* at ¶¶ 15, 18, *see also id.* at Ex. L (Garcia Declaration).

On January 6, 2026, at approximately 3 a.m., Petitioner "was asleep in his car at a car park in Massena" when he was encountered by Border Patrol agents.  Dkt. No. 1 ¶ 23.  According to Petitioner, he was in Massena to complete a job[2] and sleeping in his car to avoid motel expenses before starting work.  *Id.* at ¶¶ 22-23.  According to the Federal Respondent, Petitioner was inside a vehicle with Maryland license plates and was parked near an area known to Border Patrol agents as one used for alien smuggling.  Przepasniak Declaration ¶ 6, Dkt. No. 7-1; *see also id.* Ex. A at 1-4, Dkt. No. 7-2.  Based on those circumstances, including the "odd" hour of night and the fact that alien smugglers often come from out of state to the border area in order to transport illegal aliens, Border Patrol agents interviewed Petitioner, who identified himself.  *Id.*  Border Patrol agents conducted a records check and confirmed that Petitioner "was a B-1/B-2 overstay as of February 10, 2024."  *Id.*  Accordingly, Petitioner was taken into the custody of the Department of Homeland Security.  *Id.*  Petitioner was served with a Form I-200, Warrant for Arrest of Alien, that day.  Przepasniak Decl. ¶ 7; *see also id.* Ex. A at 5.

On January 6, 2026, the same day as his arrest, Petitioner requested voluntary departure to Guyana and signed a declaration verifying his willingness to depart and waive any opportunity to file applications for relief or protection from removal or deportation.  Przepasniak Decl. ¶ 8, *see also id.* Ex. A at 6-8.  Petitioner withdrew his voluntary departure on January 27, 2026, and requested a Notice to Appear.  Przepasniak Decl. ¶ 9.  He was served with a Notice to Appear on February 5, 2026, alleging that "he is subject to removal in that after admission as a nonimmigrant

---

[2] Petitioner "worked as a contractor/technician for Pelaton, servicing machines in the Metropolitan area and beyond." Dkt. No. 1 at 20.

under the Immigration and Nationality Act (INA), he remained in the United States for a time longer than permitted in violation of law." *Id.* at ¶ 10, *see also id.* Ex. A at 9-11. Petitioner was notified that he would be detained pending removal proceedings, and subsequently requested review of his custody determination by an immigration judge. Przepasniak Decl. ¶ 10, *see also id.* Ex. A at 12. Petitioner was afforded an initial bond hearing on February 9, 2026, and the immigration judge denied bond. Przepasniak Decl. ¶ 11, *see also id.* Ex. A at 13-14.

Petitioner initiated the process for requesting permission to marry Garcia while detained "within days of his detention." Dkt. No. 1 ¶ 31; *see also id.* Ex. N (Perticone Affidavit). According to Petitioner's counsel, once a detainee requests permission to marry, the Broome County Sherriff's Department is asked "to conduct an investigation into the proposed marriage to address security concerns." Perticone Aff. ¶ 4. "If the proposed marriage does not pose security concerns," the Broome County Sheriff's Department "contacts ICE to ascertain whether it has any objections." *Id.* If there are no objections, the facility chaplain is notified, who "will then be in charge of facilitating the marriage[.]" *Id.*

Petitioner alleges that on February 23, 2026, Lieutenant Daniel Snyder initiated the request for the Broome County Sheriff's Department to conduct its security inquiry related to Petitioner's request for permission to marry. Perticone Aff. ¶ 6. According to Petitioner's counsel, the inquiry would be completed within 30-60 days. *Id.* However, on March 10, 2026, "Petitioner was shaving a fellow detainee" in violation of a Broome County Correctional Facility rule. Dkt. No. 1 at ¶ 32. As a consequence of the violation, Petitioner was "taken out of his unit for three days and then

returned." *Id.* Broome County Correctional Facility thereafter "required [Petitioner] to re-submit his application [for permission to marry] by approximately the end of March." *Id.*[3]

Petitioner requested a second custody redetermination and filed a motion to terminate proceedings or administratively close proceedings. On March 2, 2026, an immigration judge issued (1) an order removing Petitioner to Guyana, Przepasniak Decl. ¶ 12; *see also id.* Ex. A at 12; (2) an order denying Petitioner's motion to terminate or administratively close proceedings, *id.*; and (3) an order denying bond a second time, stating that "there are no significant or material changes in the facts since [Petitioner's] first bond motion," Przepasniak Decl. ¶ 13, *see also id.* Ex. A at 19-20. Petitioner timely filed a Notice of Appeal with respect to both the order of removal and the denial of bond. Dkt. No. 1 ¶ 43, *see also id.* Ex. R (Notice of Appeal).

## III.    JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to 'discretionary judgment,' 'action,' or 'decision' by the Attorney General with respect to either detention or removal." *Mahmodi v. Marich*, No. 25-cv-6762, 2026 WL 113473, at *2 (W.D.N.Y. Jan. 15, 2026) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (other citations omitted)).

---

[3] At the hearing on the habeas petition, counsel for the State Respondent corroborated Petitioner's allegations to the extent that an application for marriage was commenced, however Petitioner's "behavior penalty" stemming from the shaving incident required the security clearance to be performed "again." Once the renewed security clearance was received, counsel represented that the State Respondent would refer the matter to ICE for a decision.

## IV.   DISCUSSION

### A.   Fourth Amendment – Unreasonable Seizure

Petitioner challenges his January 6, 2026 arrest, arguing that "no reasonable suspicion existed for any inquiry of Petitioner or request for identification," "the request for [Petitioner's] license disclosed no outstanding issues," and the Border Patrol officer who approached Petitioner's vehicle "must have observed that he is black." Dkt. No. 1 at 5. The Federal Respondent contends that (1) Petitioner's Fourth Amendment claim is not cognizable on habeas review, and (2) even if the Court were to consider the merits of Petitioner's Fourth Amendment claim, he is not entitled to habeas relief on this basis because the stop and arrest were legal.

There is conflicting authority over whether Petitioner's Fourth Amendment unreasonable seizure claim is cognizable on habeas review. At least one other court in this Circuit has explicitly declined to apply Fourth Amendment protection to noncitizens in this context. *See Palma v. Arteta*, No. 25 Civ. 9340, 2026 WL 697015, at *13 (S.D.N.Y. Mar. 12, 2026) (rejecting immigration habeas petitioner argument that arrest was unreasonable seizure in violation of the Fourth Amendment and noting that "it is not clear . . . that Flores is part of 'the people' whose right against unreasonable seizures is protected by the Fourth Amendment."); *see also Walizada v. Trump,* No. 2:25-cv-00768, 2025 WL 3551972, at *22 (D. Vt. Dec. 11, 2025) ("Mr. Walizada has not cited, and the court has not found, any authority for a Fourth Amendment claim based on prolonged immigration detention."); *but see Munoz Materano v. Arteta,* 804 F. Supp. 3d 395, 423 (S.D.N.Y. 2025) (granting habeas petition based, in part, on finding that respondents detained petitioner in violation of the Fourth Amendment). Although the Second Circuit has recognized that "egregious" violations of the Fourth Amendment are properly raised on review of removal

proceedings, *see Maldonado v. Holder*, 763 F.3d 155, 159 (2d Cir. 2014), Petitioner's habeas petition to this court is limited to a review of the legality of his detention.

The Court need not determine whether Petitioner's claim is properly raised on habeas review for purposes of this petition, however, because even if cognizable, Petitioner's claim does not warrant habeas relief. Under *Terry v. Ohio*, 392 U.S. 1 (1968), a law enforcement officer may make a brief investigative stop based upon reasonable suspicion that "criminal activity may be afoot[.]" *Id*. at 30. The officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence" and "obviously less demanding than that for probable cause[.]" *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

"Border patrol agents on roving patrol are subject to *Terry*'s reasonable suspicion standard." *United States v. Cruz-Castelazo*, 686 F. Supp. 3d 372, 377 (D. Vt. 2023) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (explaining that agents "on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country")); *see also United States v. Singh*, 415 F.3d 288, 294 (2d Cir. 2005) (explaining that officers on roving patrol must have a "particularized and objective basis for suspecting legal wrongdoing" in light of the "totality of the circumstances") (internal quotation marks omitted).

"When a border patrol agent has a reasonable suspicion of criminal activity, 'he may stop the car briefly and . . . question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances[.]'" *Cruz-Castelazo,* 686 F. Supp.

3d at 377 (quoting *Brignoni-Ponce*, 422 U.S. at 881-82). In forming a reasonable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). "[W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *Cortez*, 449 U.S. at 419.

> The following factors may support or negate a reasonable suspicion:
>
> (1) characteristics of the area where the vehicle is found; (2) its proximity to the border; (3) usual traffic patterns on that road; (4) previous experience with alien traffic in the area; (5) recent information about specific illegal border crossings there; (6) the driver's behavior, such as attempting to evade officers; (7) characteristics of the vehicle itself; and (8) the appearance of persons in the vehicle, such as mode of dress.

*Singh*, 415 F.3d at 294 (citing *Brignoni-Ponce*, 422 U.S. at 884-85). "This list is not exhaustive and . . . the fact that some factors are suspicious" while "others appear innocent does not defeat a finding of reasonable suspicion." *Singh*, 415 F.3d at 294-95.

In this case, the Form I-213 report identifies the facts supporting the arresting Border Patrol agent's reasonable suspicion to question Petitioner. Specifically, that form states that (1) Petitioner was in a car parked in an area known to be used for alien smuggling due to its location to the St. Lawrence River and the US/Canada border, (2) Petitioner's car had out-of-state plates, and it was the agent's experience that "alien smugglers will often travel from out of state to the border area in order to transport illegal aliens from the border area," and (3) Petitioner's car was parked in this location at 2:44 a.m., which was an "odd hour of the night for this vehicle to be in this area." Dkt.

No. 7-2 at 3.[4]    Assessing these facts against the above factors, the investigative stop and identification were properly premised on articulable suspicion. *See Cruz-Castelazo*, 686 F. Supp. 3d at 378-79 ("Although . . . proximity to the border does not alone constitute reasonable suspicion for a Border Patrol stop that is not at the border or its functional equivalent, this 'vital element' contributes significantly to the reasonableness of the Border Patrol agents' suspicion.") (quoting *United States v. Nichols*, 142 F.3d 857, 867 (5th Cir. 1998)).

There is no indication that Petitioner's arrest subsequent to his identification was otherwise unlawful. Petitioner does not contest that the records check confirmed, and he admitted to the Border Patrol agent, that he was a citizen of Guyana with "no legal documentation allowing him to be in, pass through, or remain in the United States legally." Dkt. No. 7-2. This information formed the basis of the Warrant to Arrest Petitioner "as authorized by section 236 of the Immigration and Nationality Act," i.e. 8 U.S.C. §1226(a), which was served on Petitioner that day. To the extent § 1226(a) "vests broad authority to arrest and detain noncitizens," *Lopez Benitez*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025), Petitioner has failed to establish that he entitled to habeas relief based on any purported illegality surrounding his arrest. *See also Garcia v. Decker,* 448 F. Supp. 3d 297, 301–02 (S.D.N.Y. 2020) ("Section 1226(a) is of extraordinary breadth. It permits the Attorney General—or, in practice, a single immigration officer acting as a delegate of the Attorney General—to arrest literally any person in the United States whom he suspects not to be a citizen and to be removable, whether or not that person in fact is a citizen of the United States or in fact is lawfully present in the United States. Under both the statute and the governing regulations, a single immigration officer can issue an administrative warrant to arrest and detain

---

[4] Petitioner does not meaningfully dispute these facts, or the Border Patrol agent's reliance on them.

any person suspected to be an 'alien . . . to be removed from the United States,' without even any prior or subsequent probable cause hearing.").

### B.      Fourteenth Amendment – Right to Marry

Petitioner contends that Respondents are infringing on his right to marry by intentionally "delaying" the approval of his marriage to Garcia while in custody.  Dkt. No. 1 ¶ 38.  Petitioner further contends that the denial of his "request to adjourn the proceedings to provide time for him to marry" Garcia deprived him of his rights.  *Id.* at ¶ 40.  In response, the Federal Respondent contends that they have not interfered with Petitioner's right to marry while in custody in violation of Petitioner's constitutional rights, and that Petitioner's claim is otherwise not cognizable on habeas review.

"While detained individuals retain the constitutional right to marry, that right is subject to reasonable restrictions related to the Government's legitimate detention-related interests." *Wahi v. Pittman*, No. CV 24-10314, 2025 WL 62914, at *3 (D.N.J. Jan. 8, 2025) (citing *Davis v. Samuels*, 962 F.3d 105, 111 n.3 (3d Cir. 2020), *reconsideration denied*, No. CV 24-10314, 2025 WL 834889 (D.N.J. Mar. 17, 2025).  Here, Petitioner does not specifically challenge the constitutionality of the general process by which detainees must seek approval in order to get married while in custody, as set forth in the affidavit of Petitioner's counsel.  Nor does the Court find that the facility procedures as described offend the balancing test articulated in *Turner v. Safely,* 482 U.S. 78, 96-97 (1987).[5]

---

[5]"In *Turner*, the Supreme Court formulated a standard of review for prisoners' constitutional claims: 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Muhammad v. Evans*, No. 11 CV 2113, 2014 WL 4232496, at *8 (S.D.N.Y. Aug. 15, 2014) (quoting *Turner,* 482 U.S. at 95). "The *Turner* court concluded that a prisoner's right to marry while incarcerated was not immune from all regulation; rather, that right is immune from regulation that bears no 'valid, rational connection . . . [to] the legitimate governmental interest put forward to justify it.'" *Id.* (quoting *Turner* 482

Otherwise, Petitioner has not established any regulation or process by Respondents that is denying or severely restricting his right to marry.  Petitioner argues that there is no legitimate basis for the Federal Respondent to deny his request to marry, but there is no indication that such a denial has been issued.  On the contrary, in a subsequent status update to the Court, the Federal Respondent submitted evidence suggesting that Petitioner's request to marry was approved as of April 22, 2026.  Dkt. No. 12-1.  The fact that Petitioner's marriage request required resubmission and evaluation after Petitioner was found to have violated a facility policy does not compel a different finding, and the record is otherwise devoid of evidence that Petitioner's rights have been violated in conjunction with his request to marry Garcia.

### C.    Fifth Amendment – Due Process

Petitioner argues that his continued detention violates his Fifth Amendment due process rights.  Dkt. No. 1 ¶ 6.  The petition itself generally contests the immigration judge's evaluation of the evidence at the bond hearing and refusal to adjourn proceedings in a manner that would further assist Petitioner's efforts to marry Garcia.  *Id.* The Federal Respondent contends that Petitioner's detention is statutorily authorized by § 1226(a), and that he has otherwise benefitted from "numerous procedural safeguards and received all process due," specifically in that he has "received two bond hearings and has filed two appeals to the" Board of Immigration Appeals (BIA). Dkt. No. 7 at 15.  The Federal Respondent also contends that Petitioner has failed to exhaust his administrative remedies with respect to this claim. In his reply, Petitioner more specifically

---

U.S. at 89). "Although the regulation at issue in *Turner* was invalidated, the Court made clear that '[t]he right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration.'" *Id.* (quoting *Turner* 482 U.S. at 95).

11

contends that at the bond hearings referenced by the Federal Respondent, the immigration judge violated Petitioner's due process rights "by requiring him to bear the burden of proving that he was not a flight risk." Dkt. No. 8 at 1. In a surreply, the Federal Respondent maintains that Petitioner waived this request for relief, and that Petitioner is otherwise not entitled to a new bond hearing. Dkt. No. 11 at 4-11.

### 1.    Exhaustion of Administrative Remedies

"A habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention." *Michalski v. Decker*, 279 F. Supp.3d 487, 495 (S.D.N.Y. 2018). "Although there is no statutory exhaustion requirement for a habeas petition brought by a civil immigration detainee, 'courts have generally required exhaustion as a prudential matter.'" *Hernandez-Hernandez v. Feeley*, 535 F. Supp. 3d 142, 150 (W.D.N.Y. 2021) (quoting *Hossain v. Barr*, No. 6:19-cv-06389, 2019 WL 5964678, at *3 (W.D.N.Y. Nov. 13, 2019)). "[I]n this Circuit, a district court may in its discretion excuse exhaustion when '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018) (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)). "With regard to futility, pursuing administrative remedies may be futile where the administrative procedures do not provide an adequate remedy, or where the agency has predetermined the issue before it." *Raspoutny v. Decker*, 708 F. Supp. 3d 371, 381–82 (S.D.N.Y. 2023) (cleaned up). However, "[e]xhaustion is the rule, waiver the exception." *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992).

District courts in this Circuit generally agree that the prudential exhaustion requirement should be waived where the issue before it is the standard of proof to be applied at a bond hearing.

*See, e.g., Blandon v. Barr*, No. 6:18-cv-06941, 2019 WL 7759228, at *4 (W.D.N.Y. Oct. 28, 2019) ("the available administrative remedies provide no genuine opportunity for adequate relief because the burden of proof the [immigration judge] would use at a bond hearing in the absence of an order from this Court does not comply with due process."); *Raspoutny v. Decker*, 708 F. Supp. 3d 371, 382 (S.D.N.Y. 2023) ("We . . . agree with the many courts in this district that have found that exhaustion should not be required in the context of challenging the hearing's burden of proof."); *see also J.C.G. v. Genalo,* No. 1:24-cv-08755, 2025 WL 88831, at *5 (S.D.N.Y. Jan. 14, 2025) (explaining that courts "routinely excuse noncitizens' failure to exhaust administrative remedies when noncitizens challenge the burden allocation at a Section 1226(a) bond hearing") (collecting cases). This Court likewise agrees that such "statutory and constitutional questions cannot be decided by an immigration judge or the BIA," *Hernandez-Hernandez v. Feeley*, 535 F. Supp. 3d 142, 150 (W.D.N.Y. Apr. 21, 2021), thus Petitioner was not required to exhaust his administrative remedies as to this issue before bringing his due process claims in federal court.

### 2.    Waiver

The Federal Respondent maintains that Petitioner waived his due process argument challenging the burden of proof applied at his bond hearings, because he only raised this argument in his reply papers. Dkt. No. 11 at 3-4. Petitioner, who is represented by pro bono counsel in this habeas action, specifically argued in his original petition that his continued detention violates the Due Process Clause of the Fourteenth Amendment, primarily focusing on issues surrounding his request to marry and "violation[s] . . . of his substantive rights to due process because of, what amounts to, arbitrary confinement." Dkt. No. 1 ¶¶ 6, 40-42. The specific issue of the proper burden of proof at Petitioner's bond hearings was only raised in reply to the Federal Respondent's opposition. Dkt. No. 8 at 1-4.

"Generally, a court does not consider issues raised in a reply brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it." *Sacchi v. Verizon Online LLC*, 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015) (citations omitted). The purpose of this rule "is relatively straightforward: to prevent a party from being prejudiced by the inability to respond to the opposing party's arguments or evidence, and to facilitate the federal courts' adversarial system of adjudication that rel[ies] on the parties to frame the issues for decision and assign[s] to courts the role of neutral arbiter of matters the parties present." *Duracell U.S. Operations, Inc. v. Energizer Brands, LLC*, No. 25 Civ. 5020, 2025 WL 2388287, at *1 (S.D.N.Y. Aug. 18, 2025) (cleaned up).

Notwithstanding this general rule, the "Second Circuit has made it abundantly clear that a district court has discretion to consider a belatedly-raised argument, and that a judge's decision to countenance such argument will be reviewed for abuse of discretion." *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017), *modified*, 2017 WL 564676 (S.D.N.Y. Feb. 13, 2017) (quoting *American Hotel Intern. Group, Inc v. OneBeacon Ins. Co*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (in turn citing *Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249 (2d Cir. 2005), and *Bayway Ref. v. Oxygenated Mktg. & Trading*, 215 F.3d 219, 226 (2d Cir. 2000)). Moreover, "[w]here new evidence [or arguments] [are] presented in a party's reply brief or affidavit in further support" of its motion, district courts should generally "permit the nonmoving party to respond to the new matters prior to disposition of the motion." *Duracell U.S. Operations, Inc.*, 2025 WL 2388287, at *2 (quoting *Bayway Refin.*, 215 F.3d at 227); *see also id.* (collecting cases), particularly considering the "strong public policy [that] favors resolving disputes on the merits," *S.E.C. v. Stewart*, No. 98 Civ. 2636, 2024 WL 382370, at *2 (S.D.N.Y. Feb. 1, 2024) (citation modified).

14

Here, the Respondents were granted permission to file a surreply to respond to the burden of proof challenge raised by Petitioner in his reply brief, curing any potential prejudice caused by a lack of opportunity to respond.  Otherwise, in light of the above standards and under the specific circumstances of this habeas action, including the pro bono nature of Petitioner's counsel and the significant constitutional rights at stake, the Court denies the Federal Respondent's request that the Court disregard the argument as waived.  *See, e.g., Escobar v. Correa*, No. 22 Civ. 8434, 2024 WL 4042122, at *6 (S.D.N.Y. Sept. 4, 2024) (explaining that "district courts have discretion to consider arguments first raised in reply briefs, which discretion can be exercised by either ignoring the new arguments or granting permission for a sur-reply").

### 3.      § 1226(e) Bar

Respondent correctly notes that "[t]he BIA is the only forum from which an alien may seek reconsideration of the substance of an IJ's discretionary bond determination." *Rajesh v. Barr*, 420 F. Supp. 3d 78, 84 (W.D.N.Y. 2019) (citing 8 C.F.R. §§ 1003.19(f), 1003.38, 1236.1(d)(3)); *see also Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (citing 8 U.S.C. § 1226(e) (stating that "[n]o court may set aside any action or decision by [immigration officials] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole")). "What § 1226(e) does not bar, however, are constitutional challenges to the immigration bail system." *Pensamiento v. McDonald*, 315 F. Supp.3d 684, 688–89 (D. Mass. 2018) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (holding that challenges to "the extent of the Government's detention authority" are not precluded by § 1226(e)); *see also Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.").

15

Here, to the extent Petitioner challenges discrete, substantive findings by the immigration judge at his prior bond hearings, the Court would agree that those challenges are barred by § 1226(e) and not subject to review.   However, Petitioner also contends that the procedures governing his right to a bond hearing pursuant to § 1226(a), i.e. requiring a petitioner to bear the burden of proving he is neither dangerous nor a flight risk, violate his Fifth Amendment due process rights.  "This type of constitutional claim 'falls outside of the scope of § 1226(e)' because it is not a matter of the [immigration judge's] discretionary judgment." *Pensamiento*, 315 F. Supp.3d at 689 (quoting *Jennings*, 583 U.S. at 295); *accord Aparicio-Villatoro v. Barr*, No. 6:19-cv-06294, 2019 WL 3859013, at *5 (W.D.N.Y. Aug. 16, 2019); *see also Singh v. Barr*, 400 F. Supp. 3d 1005, 1016 (S.D. Cal. 2019) ("Singh's challenge . . . is plainly legal in nature; he contests that his prior hearing was legally inadequate because it was not conducted under procedures required by Due Process—i.e., with the burden of proof on the government.").

### 4.    Due Process

"Utilizing the three-factor balancing test provided in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Second Circuit recognized in *Velasco Lopez* that a noncitizen incarcerated pursuant to 8 U.S.C. § 1226(a) for 15 months was entitled to a bond hearing where the government bore the burden to establish by clear and convincing evidence that he should be detained."  *Fermin Javier v. Rhoney*, No. 6:26-cv-06076, 2026 WL 787935, at *1 (W.D.N.Y. Mar. 20, 2026) (citing *Velasco Lopez,* 978 F.3d at 855).   The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424

U.S. at 335. Although *Velasco Lopez* did not establish a bright-line rule "'for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden,' the court nonetheless held that '[o]n any calculus' the 15-month incarceration in that case violated due process." *Fermin Javier,* 2026 WL 787935 at *1 (quoting *Velasco Lopez*, 978 F.3d at 855 n.13).

"Since *Velasco Lopez* was decided, district courts in this Circuit have reached conflicting interpretations of the opinion." *Huanga v. Decker,* 599 F. Supp. 3d 131, 139 (S.D.N.Y. 2022). Some courts "have concluded that *Velasco Lopez* requires case-specific *Matthews* balancing to determine whether the burden of proof at a § 1226(a) hearing worked a violation of due process." *Id.* at 139 (collecting cases). "Other courts have held that the view of many courts in this Circuit prior to *Velasco Lopez*—that the burden of proof at a § 1226(a) hearing must always rest on the Government to comport with due process—retains viability following *Velasco Lopez*." *Id.* (collecting cases); *see also J.C.G.,* 2025 WL 88831, at *7 (noting that "[n]umerous courts" in the Southern District of New York have held that when "the Government seeks to detain a noncitizen pending removal pursuant to § 1226(a), the Fifth Amendment Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that such detention is justified."). It is unnecessary for this Court to decide whether the burden must always rest on the Government to satisfy due process because application of the *Matthews* factors to the specific facts of this case indicate that Petitioner is entitled to a new bond hearing with a shifted burden.

With respect to the first *Mathews* factor, the Federal Respondent concedes, and the Court agrees, that "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). The Federal Respondent asks this Court to afford

less weight to this factor, however, because Petitioner's detention has not "become unduly prolonged" as was the case in *Velasco Lopez.* Dkt. No. 11 at 8.

Petitioner has been detained for more than four months, and there is no indication that decisions on his appeals pending before the BIA are imminent.[6] As a result, Petitioner's detention "could continue for several months (and potentially years) longer." *J.C.G.,* 2025 WL 88831, at *10; *see also id.* (explaining that Petitioner's counsel represented that "on average, the Board takes between two and five months after briefing on the merits is completed to issue a decision," and, if the appeal is successful, a remand would be likely which would take months, and if the appeal is not successful, then an appeal to the Second Circuit could take "months or even years") (citations omitted).

In addition, Petitioner, like Velasco Lopez, is being held at a criminal detention facility, "alongside criminally charged defendants and those serving criminal sentences." *Velasco Lopez,* 978 F.3d at 851-52. As he is "locked up in jail," Petitioner cannot "maintain employment or see his family or friends or others outside normal visiting hours." *Id.* Significantly, Petitioner has been unable to care for his child with special needs due to his confinement. On these considerations, the Court finds that the deprivations Petitioner has experienced in detention are "substantial," and thus this factor weighs in Petitioner's favor. *See, e.g., Quintanilla,* 2021 WL 707062, at *3 (granting individualized bond hearing with burden of proof on government where petitioner was detained for less than four months).

The Court also finds that the second *Mathews* factor weighs in favor of Petitioner. The Federal Respondent argues that Petitioner's representation by counsel at each of his prior bond

---

[6] At the hearing on the habeas petition, counsel for the Petitioner represented that the appeals to the BIA had not yet been briefed.

18

hearings mitigated any risk of erroneous deprivation. Nevertheless, "[t]here is a risk of erroneous deprivation when the burden of proof lies with the detainee, who is required to prove a negative when access to information relevant to the burden may lie with the Government." *P.M. v. Joyce*, No. 22-cv-6321, 2023 WL 2401458, at *4 (S.D.N.Y. Mar. 8, 2023) (citing *Velasco Lopez*, 978 F.3d at 852–53); *see also Linares Martinez v. Decker*, No. 18-cv-6527, 2018 WL 5023946, at *3 (S.D.N.Y. Oct. 17, 2018) ("[T]he Government is generally in a better position than a detained [person] to gather and present evidence relevant to the bond determination."). Furthermore, the record reflects that Petitioner's detention was not based on an assessment of dangerousness to the community, but solely on risk of flight.[7] Petitioner has, however, produced at least some evidence of his ties to the community, including the role he plays in his family and toward the care of his children. Under these circumstances, a new bond hearing at which the Government bears the burden to justify detention would thus mitigate the risk of erroneous deprivation under the status quo. *Velasco Lopez*, 978 F.3d at 854.

As to the third *Mathews* factor, the government certainly has a strong interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (alterations and citations omitted). On the other hand, as the Second Circuit recognized in *Velasco Lopez,* "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight," and "shifting the burden of proof to the Government to justify continued detention

---

[7] At the hearing on the habeas petition, counsel for Petitioner represented that the decision to deny bond was solely based on flight risk. This representation is corroborated by the orders of the immigration judge provided as exhibits to the Federal Respondent's opposition. *See* Dkt. No 7-2 at 13 (denying request for change in custody status based on lack of "sufficient roots in the community," among other facts consistent with an analysis regarding risk of flight); 19 (indicating that Petitioner "still presents a flight risk" in denying request for change in custody status).

19

promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." 978 F.3d at 854. Moreover, as the Second Circuit recognized in *Velasco Lopez*, "the Government has not convinced us that requiring it to justify [a petitioner's] detention by clear and convincing evidence substantially undermines its legitimate interests or entails an undue administrative burden." 978 F.3d at 854-55. Indeed, "[w]hen the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, as in this case, it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees. The Government articulates no public interest that any of this serves and we see none." *Id*. at 855. The same reasoning applies here, and placing the burden of proof on the Government under the specific circumstances of this case "promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id*. at 854.

Based on the foregoing analysis, the Court finds that all three *Mathews* factors weigh in favor of granting Petitioner's request for a new bond hearing at which the Government will bear the burden of justifying his detention.

## V.    CONCLUSION

For these reasons, it is

**ORDERED** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the Petition is **GRANTED** solely to the extent that within seven (7) days of the date of entry of this Memorandum-Decision and Order, the Federal Respondent shall afford Petitioner an individualized bond hearing. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community or a

20

flight risk.  If the Government fails to provide Petitioner such a bond hearing within seven days, the Government shall immediately release Petitioner. If the Government holds the required bond hearing but fails to prove, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk, the Government must release him on bail with appropriate conditions; and it is further

**ORDERED** that the Federal Respondent provide a status report to this Court within 48 hours following the completion of the bond hearing; and it is further

**ORDERED** that the Petition is **DENIED** in all other respects.

Dated: May 15, 2026

_____
Elizabeth C. Coombe
U.S. District Judge